## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS, BENTON DIVISION

RAMADA WORLDWIDE INC., formerly ) 
known as RAMADA FRANCHISE SYSTEMS, ) 
INC., a Delaware corporation, ) 

       Plaintiff, )

v. )   No. 06-4027-JPG

PATEL & RISHI, an Illinois General Partnership, ) 
and POPATLAL "PETER" PATEL and ) 
NATUBHAI RISHI, individuals, ) 

       Defendants. )

**FILED**

JAN 2 3 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

### VERIFIED COMPLAINT

Plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI"), states as follows for its Verified Complaint against defendants Patel & Rishi, Popatlal "Peter" Patel, and Natubhai Rishi (collectively "Defendants"):

### NATURE OF THE CASE

1.    This action arises from Defendants' breach of a License Agreement and Guaranty and unauthorized and improper use of plaintiff RWI's federally registered service marks and logos (the "Ramada Marks"). Following a breach of a written License Agreement and Guaranty by Defendants, and termination of the License Agreement by RWI, Defendants continue to use RWI's trademarks without authorization. Despite written demands to cease and desist, Defendants have continued to use the Ramada Marks. RWI brings this action to redress the continuing infringement of its trademark rights and to recover damages resulting from Defendants' breaches of the parties' License Agreement and Guaranty. This action is brought pursuant to the parties' contracts, Sections 1114 and 1125 of the Trademark Act of 1946, as

amended (15 U.S.C. §§ 1051, *et seq*.) (also known as the Lanham Act), and the laws of the State of Illinois.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff RWI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.  RWI is registered to transact business in Illinois.

3.      Defendant Patel & Rishi ("P&R") does business as an Illinois partnership, with its principal office at 709 East Vine Street, Vienna, Illinois 62995.

4.      Defendant Popatlal "Peter" Patel ("Patel") is an individual and a citizen of the State of Illinois, residing at 203 South Oakland Avenue, Carbondale, Illinois 62901.  Patel is or was at all relevant times a general partner of P&R, and Patel guaranteed P&R's obligations under the License Agreement with respect to the operation of the guest lodging facility in Vienna, Illinois at issue.

5.      Defendant Natubhai Rishi ("Rishi") is an individual and a citizen of the State of Missouri, residing at 1063 Dautel Lane, Saint Louis, Missouri, 63146.  Rishi is or was at all relevant times a general partner of P&R, and Rishi guaranteed P&R's obligations under the License Agreement with respect to the operation of the guest lodging facility in Vienna, Illinois at issue.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Defendants because the activities complained of occurred here, including the unauthorized display of the Ramada Marks in violation of RWI's trademark rights.  In addition, this Court has personal jurisdiction over Defendants by virtue of, among other things, section 2 of the Addendum to the August 29, 1995

License Agreement by and between P&R and RWI (the "License Agreement"), described in more detail below, pursuant to which section 17.4 of the License Agreement was amended by providing "that all litigation by or between [P&R] and [RWI], arising directly or indirectly from the franchise relationship, shall be commenced and maintained . . . in the state courts of Illinois or the United States District Court for Illinois . . . ."  In addition, this Court has personal jurisdiction over Patel and Rishi by virtue of, among other things, the terms of a Guaranty (the "Guaranty"), described in more detail below, pursuant to which Patel and Rishi acknowledged that they were personally bound by section 17 of the License Agreement.

8.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because the activities complained of occurred in this judicial district, including the unauthorized display of the Ramada Marks in violation of RWI's trademark rights.

**ALLEGATIONS COMMON TO ALL COUNTS**

The Ramada Marks

9.     RWI is widely known as a provider of guest lodging facility services.

10.     RWI's service marks and logos (the "Ramada Marks") appear on the principal register of the United States Patent and Trademark Office (A chart of the Ramada Marks is attached to this Verified Complaint as Exhibit A).  RWI has the exclusive right to use and to sublicense the Ramada Marks and derivations thereof, as well as the distinctive Ramada System, which provides guest lodging facility services to the public under the Ramada name.  RWI and its predecessors have continuously used each of the Ramada Marks since the date of its registration.  The Ramada Marks are owned by Two Flags Joint Venture, LLC, a corporate affiliate of RWI.  RWI has an exclusive and perpetual license for the Ramada Marks, which includes the right to sue for infringement.  Those registrations are in full force and effect,

3

unrevoked and uncancelled pursuant to 15 U.S.C. § 1065. RWI has given notice to the public of the registration of its trademarks and service marks as provided in 15 U.S.C. § 1111.

11.     Through its franchise system, RWI markets, promotes and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of its guest lodging facility services, RWI allows its franchisees to utilize the Ramada Marks and to promote the Ramada brand name subject to the terms of written license agreements.

12.     RWI has invested substantial effort over a long period of time, including the expenditure of substantial sums of money, to develop goodwill in its trade names and trademarks and to cause consumers throughout the United States to recognize the Ramada Marks as distinctly designating Ramada guest lodging facility services as originating with RWI.

13.     Although the value of the goodwill developed in the Ramada Marks does not admit of precise monetary calculation, because RWI is a national guest lodging facility franchise and is widely known as a provider of guest lodging facility services, the value of RWI's goodwill is substantial.

14.     The Ramada Marks are famous in the United States.

The Agreement Between The Parties

15.     On or about August 29, 1995, RWI entered into a license agreement (the "License Agreement") with P&R for the operation of a 60-room guest lodging facility located at 709 East Vine Street, Vienna, Illinois 62995, Site No. 7532 (the "Facility"). A true copy of the License Agreement is attached to this Verified Complaint as Exhibit B.

16.     Pursuant to section 5 of the License Agreement, P&R was obligated to operate a Ramada® guest lodging facility at 709 East Vine Street, Vienna, Illinois, for a 20-year term, during which time P&R was permitted to use the Ramada Marks in association with the operation and use of the Facility as part of RWI's franchise system.

4

17.     Pursuant to section 3 of the License Agreement, P&R was required, among other things, to make renovations to the Facility in order to bring the Facility into compliance with "System Standards," "Approved Construction Plans," and/or a "Punch List," all of which were defined in or attached to the License Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by RWI.

18.     Pursuant to section 3.4 of the License Agreement, P&R was required to operate the Facility in compliance with RWI's "System Standards," as defined in the License Agreement, including RWI's quality assurance requirements.

19.     Pursuant to section 4.8 of the License Agreement, RWI had the "unlimited right to conduct unannounced quality assurance inspections" of the Facility (and the unlimited right to reinspect if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with RWI's quality assurance requirements.

20.     Pursuant to sections 7 and 18 and Schedule C of the License Agreement, P&R was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

21.     Pursuant to section 3.9 of the License Agreement, P&R was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by P&R at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

22.     Pursuant to section 3.9 of the License Agreement, P&R agreed to maintain at the Facility accurate financial information, including books, records and accounts relating to the gross room revenue of the Facility, and, pursuant to sections 3.8 and 4.8 of the License

Agreement, P&R agreed to allow RWI to examine, audit and make copies of the entries in these books, records and accounts.

23.     Section 7.3 of the License Agreement provides that "Interest is payable when [P&R] receive[s] [RWI's] invoice on any past due amount payable to [RWI] under this [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

24.     Pursuant to section 11.2 of the License Agreement, RWI could terminate the License Agreement, with written notice to P&R, for various reasons, including P&R's (a) failure to pay any amount due to RWI under the License Agreement when due, (b) failure to remedy any other default of its obligations under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one-year period, whether or not the defaults were cured.

25.     Pursuant to section 12.1 of the License Agreement, P&R agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in the License Agreement.

26.     Section 18.5 specifically set liquidated damages for the Facility upon termination of the License Agreement at $1,000.00 for each guest room of the Facility.

27.     Section 13 of the License Agreement specified P&R's obligations in the event of the termination of the License Agreement, including its obligation immediately to cease using all of the Ramada Marks and completely de-identify the Facility.

28.     Pursuant to section 17.4 of the License Agreement, P&R agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees,

6

incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

29.     Effective as of the date of the License Agreement, Patel and Rishi, jointly and severally, and irrevocably and unconditionally, provided RWI with a Guaranty of P&R's obligations under the License Agreement (the "Guaranty").   A true copy of the Guaranty is attached to this Verified Complaint as Exhibit C.

30.     Pursuant to the terms of the Guaranty, Patel and Rishi each agreed, among other things, that upon default under the License Agreement, they would immediately make all payments and/or perform all obligations required under the License Agreement.

31.     Pursuant to the terms of the Guaranty, which expressly acknowledges that section 17 of the License Agreement applies to the Guaranty, Patel and Rishi each agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement.

The Defendants' Defaults and Termination

32.     Beginning in July 2001, P&R repeatedly failed to operate the Facility in accordance with RWI's System Standards, in breach of its obligations under the License Agreement.

33.     On July 31, 2001, RWI conducted a Quality Assurance ("QA") inspection of the Facility. The Facility received a failing score of 363-F in the Inn segment of the QA inspection.

34.     By letter dated August 21, 2001, a true copy of which attached to this Verified Complaint as Exhibit D, RWI advised P&R that (a) the Facility had received a failing score on the July 30, 2001 QA inspection and, as a result, P&R was in default of its QA obligations under the License Agreement, (b) pursuant to the License Agreement, it had thirty (30) days within which to cure the QA default, (c) if the default was not cured, then P&R's Additional

7

Termination Right in the License Agreement would automatically terminate, and (d) if the default was not cured, then reservation service to the Facility might be suspended and the License Agreement might be subject to termination.

35.     On December 5, 2001, RWI conducted another QA inspection of the Facility. The Facility received its second consecutive failing score of 244-F in the Inn segment and a failing score in the Food and Beverage segment of the QA inspection.

36.     By letter dated December 13, 2001, a true copy of which is attached to this Verified Complaint as Exhibit E, RWI advised P&R that (a) the License Agreement was now subject to termination, (b)  reservation service to the Facility would be suspended on December 27, 2001, and (c) P&R's Additional Termination Rights in the License Agreement were automatically null and void due to the continuing default.

37.     On August 23, 2002, RWI conducted another QA inspection of the Facility.  The Facility received a failing score of 257-F in the Inn segment of the QA inspection.

38.     By letter dated December 31, 2002, a true copy of which is attached to this Verified Complaint as Exhibit F, RWI advised P&R that RWI had the right under the License Agreement to issue a default notice as a result of the Facility's August 23, 2002 QA failure, but as a gesture of good will and with the expectation that P&R remedy the situation in a timely manner, RWI would not then do so.

39.     On January 29, 2003, RWI conducted another QA inspection of the Facility.  The Facility received a failing score of 284-F in the Inn segment and a failing score in the Food and Beverage segment of the QA inspection.

40.     By letter dated March 4, 2003, a true copy of which is attached to this Verified Complaint as Exhibit G, RWI advised P&R that (a) the Facility had received a failing score on

8

the January 29, 2003 QA inspection and, as a result, P&R was in default of its QA obligations under the License Agreement, and (b) if the Facility did not receive a passing score upon re-inspection, the License Agreement would be subject to termination.

41.     By letter dated May 20, 2003, a true copy of which is attached to this Verified Complaint as Exhibit H, RWI advised P&R that (a) P&R was in default under the License Agreement as a result of its failure to comply with the technology System Standards, (b) P&R had thirty (30) days to cure this default, and (c) P&R's refusal to comply with Ramada technology standard would result in restriction from reservation service to the Facility if the default was not cured within seven (7) days.

42.     Despite these repeated written notices, P&R failed to cure its defaults under the License Agreement.

43.     Accordingly, by letter dated October 3, 2003, a true copy of which is attached to this Verified Complaint as Exhibit I, RWI notified P&R of its continuing default and advised P&R, among other things, that (a) the License Agreement would be terminated effective on January 16, 2004, if the Facility failed its next QA inspection, (b) in the event of termination, P&R would be obligated to pay to RWI Liquidated Damages for premature termination of the License Agreement, and (c) in the event of termination, P&R would be required to perform its post-termination obligations including removal of all the Ramada Marks.

44.     On February 4, 2004, RWI conducted another QA inspection of the Facility. The Facility received a failing score of 264-F in the Inn segment of the QA inspection. A true copy of the February 4, 2004 QA inspection report is attached to this Verified Complaint as Exhibit J

45.     Accordingly, by letter dated February 27, 2004, a true copy of which is attached to this Verified Complaint as Exhibit K, RWI terminated the License Agreement effective

February 27, 2004 ("Termination Letter").  The Termination Letter advised P&R that (a) it was to discontinue the use of all signage and other items bearing the Ramada Marks and perform all post-termination obligations, including changing all signs and billboards to remove all Ramada Marks, and (b) it was required to pay to RWI Liquidated Damages in the amount of $60,000.00 due under the License Agreement, in addition to all outstanding Recurring Fees and additional monies to which RWI was entitled under the License Agreement through the date of de-identification of the Facility.

46.     The termination of the License Agreement precludes P&R from any further use of the Ramada Marks in or around the Facility.

47.     The termination of the License Agreement precludes P&R from any further use of the Ramada Marks to induce the traveling public to use the Facility in any way.

48.     Since the termination of the License Agreement, Defendants have continued to use the Ramada Marks to induce the traveling public to rent guest rooms at the Facility.

49.     Since the termination of the License Agreement, Defendants have used the Ramada Marks without authorization to rent rooms through, among other things, their failure to remove Ramada signage and other items bearing the Ramada Marks.

50.     By letter dated August 18, 2004, a true copy of which is attached to this Verified Complaint as Exhibit L, RWI again demanded that Defendants cease and desist their infringement of the Ramada Marks.  RWI advised Defendants that their unauthorized use of the Ramada Marks constitutes trademark infringement, and demanded that they "remove from the Facility all of the items associated with the Ramada brand, so it cannot be confused with a Ramada guest lodging facility" and "immediately cease all use of the Ramada trade names, trademarks and service marks."

10

51.     By letter dated January 5, 2005, a true copy of which is attached to this Verified
Complaint as Exhibit M, RWI repeated its demand that Defendants cease and desist their
infringement of the Ramada Marks.   RWI demanded that Defendants "immediately cease
operating the Facility as a Ramada System Unit and distinguish it in <u>all</u> respects from its former
appearance as a Ramada guest lodging facility.   Specifically, [RWI] demands that P&R
immediately discontinue all use of trade names, service marks, domain names, e-mail addresses,
signs, forms of advertising and other indicia that the Facility operates as a Ramada System Unit."
RWI also again demanded payment of the Liquidated Damages due under the License
Agreement.

52.     On July 14, September 26, September 30 and October 18, 2005, RWI again
demanded that Defendants immediately cease and desist their unlawful infringement of the
Ramada Marks and advised Defendants that their unauthorized trademark infringement may be
redressed by injunctive relief, damages and an award of attorneys' fees.   True copies of the July
14, September 26, September 30 and October 18, 2005 letters are attached to this Verified
Complaint as Exhibits N, O, P and Q, respectively.

53.     Defendants have continued to misuse the Ramada Marks despite receiving
repeated demands from RWI to cease and desist from the misuse of the Ramada Marks.

## <u>COUNT ONE – SECTION 32 OF THE LANHAM ACT</u>

54.     RWI repeats and makes a part hereof each and every allegation set forth in
paragraphs 1 through 53 of this Verified Complaint.

55.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part
that "[a]ny person who shall, without the consent of the registrant — use in commerce any
reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the
sale, offering for sale, distribution, or advertising of any goods or services on or in connection

11

with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

56.    Defendants have marketed and promoted and rented, and continue to market and promote and rent rooms at the Facility through the unauthorized use of the Ramada Marks. Such use has caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act. Defendants' actions therefore infringe the exclusive rights granted to RWI by its federal trademark registration, all in violation of 15 U.S.C. § 1114.

57.    Defendants have committed the acts described above with knowledge of RWI's registration of the Ramada Marks, and with an intent to cause confusion, mistake, and deception of the consuming public.

58.    As a result of Defendants' acts, RWI faces irreparable injury to its business, including, but not limited to, loss of sales, profits, business reputation and goodwill, and a likelihood that the distinctive quality of the Ramada Marks will be diluted, losses which are virtually impossible to calculate. In addition, Defendants' actions have caused RWI damages in an amount yet to be determined.

<u>COUNT TWO – SECTION 43(a) OF THE LANHAM ACT</u>

59.    RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 58 of this Verified Complaint.

60.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to

cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

61.     The acts of Defendants in marketing, promoting, and renting rooms at the Facility, through and with the Ramada Marks, constitute (a) a false designation of origin; (b) a false and misleading description of fact; and (c) false and misleading representation of fact, which have caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of their Facility with RWI, and to cause confusion, or to cause mistake, or deception, to the effect that RWI sponsors or approves of the guest lodging services that Defendants provide at the Facility, all in violation of Section 43(a) of the Lanham Act.

62.     Defendants' acts of infringement in violation of Section 43(a) were committed with knowledge of RWI's registration of the Ramada Marks, and were undertaken and continued with an intent to cause confusion, mistake and deception of the consuming public. Defendants' commission of such acts with knowledge of RWI's rights constitutes a willful violation of Section 43(a) of the Lanham Act.

63.     As a result of Defendants' ongoing acts of infringement, RWI faces irreparable injury to its business and the likelihood that the distinctive and identifying indicia of RWI's business will be diluted and that its reputation as a source of high quality guest lodging facility services will be diminished, losses which are virtually impossible to calculate. In addition, Defendants' actions have caused RWI damages in an amount yet to be determined.

## COUNT THREE – SECTION 43(c) OF THE LANHAM ACT

64.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 63 of this Verified Complaint.

65.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon

13

such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

66.    Defendants' use of the Ramada Marks in connection with goods and services at the Facility has caused, and will continue to cause, dilution and disparagement of the distinctive quality of the Ramada Marks and has lessened, and will continue to lessen, the capacity of the Ramada Marks to identify and distinguish the goods and services of RWI, all in violation of Section 43(c) of the Lanham Act.

67.    Defendants' ongoing acts of infringement in violation of Section 43(c) were committed with knowledge of RWI's registration of the Ramada Marks and were undertaken and continued with an intent to cause confusion, mistake and deception of the consuming public. Defendants' commission of such acts with knowledge of RWI's rights constitutes a willful violation of Section 43(c) of the Lanham Act.

68.    As a result of Defendants' ongoing acts of infringement, RWI faces irreparable injury to its business and the likelihood that the distinctive and identifying indicia of RWI's business will be diluted and that its reputation as a source of high quality guest lodging facility services will be diminished, losses which are virtually impossible to calculate.  In addition, Defendants' actions have caused RWI damages in an amount yet to be determined.

## COUNT FOUR – UNJUST ENRICHMENT

69.    RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 68 of this Verified Complaint.

70.     Defendants have benefited from their wrongful and unauthorized use of the Ramada Marks after termination of the License Agreement and have not paid any royalty or other Recurring Fees to RWI in return for that benefit.

71.     Defendants' failure to compensate RWI constitutes unjust enrichment and has damaged RWI.

### COUNT FIVE – ILLINOIS DECEPTIVE TRADE PRACTICES ACT

72.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 71 of this Verified Complaint.

73.     In carrying out the acts described above, Defendants have sought, among other trade practices, (a) to pass off their guest lodging facility services as those of RWI, (b) to cause a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of those services, and (c) to cause a likelihood of confusion or misunderstanding as to their affiliation, connection or association with RWI.

74.     Defendants' actions therefore violate the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, and constitute willful violations of that Act.

### COUNT SIX – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

75.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 74 of this Verified Complaint.

76.     By their violation of the Illinois Deceptive Trade Practices Act, as set forth in the Fifth Count, and by their deceptive and continued use of the Ramada Marks in unfair competition with RWI, Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

15

**COUNT SEVEN – COMMON LAW UNFAIR COMPETITION**

77.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 76 of this Verified Complaint.

78.     The acts described above reflect Defendants' plan and actions by which they, without authority, consent or privilege, intend to imitate and pass off their guest lodging facility services as having received the sponsorship or approval of RWI and met its quality standards. Defendants' conduct also dilutes the value of the Ramada Marks built by RWI's substantial expenditure of money, effort and service.  Such conduct constitutes unfair competition with RWI in violation of the common law of the State of Illinois.  Unless Defendants' continuing unfair competition is restrained and enjoined by this Court, RWI will continue to suffer irreparable harm and injury.

79.     As a result of Defendants' willful and deliberate acts of unfair competition, RWI has suffered injury to its business and is entitled to an award of damages.

**COUNT EIGHT – ACCOUNTING**

80.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 79 of this Verified Complaint.

81.     Pursuant to sections 3.8 and 4.8 of the License Agreement, P&R agreed to allow RWI to examine, audit and make copies of P&R's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

82.     Defendants have engaged in acts and practices, as described above, which amount to infringement of the Ramada Marks in an unlawful, unfair and fraudulent manner which is likely to confuse the public.

83.     As a result, Defendants owe restitution and the disgorgement of profits, in an amount unknown to RWI, and which amount cannot be ascertained without an accounting of the

receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Defendants.

## COUNT NINE – BREACH OF CONTRACT – LIQUIDATED DAMAGES

84.    RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 83 of the Verified Complaint.

85.    Pursuant to section 5 of the License Agreement, P&R was required to operate and maintain the Facility as a Ramada guest lodging facility continuously from August 29, 1995, through the expiration of the License Agreement on August 28, 2015.

86.    On February 27, 2004, RWI properly terminated the License Agreement due to P&R's breaches of the License Agreement.

87.    By virtue of the premature termination of the License Agreement, RWI sustained a loss of future revenue over the remainder of the 20-year term of the License Agreement.

88.    Sections 12.1 and 18.5 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, P&R shall pay Liquidated Damages to RWI within 30 days of termination.

89.    As a result of the termination of the License Agreement, P&R is obligated to pay RWI Liquidated Damages in the amount of $60,000.00, as calculated pursuant to sections 12.1 and 18.5 of the License Agreement.

90.    Notwithstanding RWI's demand for payment, P&R has failed to pay RWI the liquidated damages as required by sections 12.1 and 18.5 of the License Agreement.

91.    RWI has been damaged by P&R's failure to pay liquidated damages.

## COUNT TEN – ALTERNATIVE BREACH OF CONTRACT – ACTUAL DAMAGES

92.    RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 91 of this Verified Complaint.

93.     Pursuant to section 5 of the License Agreement, P&R was required to operate and maintain the Facility as a Ramada guest lodging facility continuously for a 20-year term, from June 23, 1995 through September 26, 2015.

94.     On February 27, 2004, RWI properly terminated the License Agreement due to P&R's breaches of the License Agreement.

95.     By virtue of the premature termination of the License Agreement, RWI sustained a loss of future revenue over the remainder of the 20-year term of the License Agreement.

96.     If the Court determines that P&R is not liable to pay RWI Liquidated Damages as required by sections 12.1 and 18.5 of the License Agreement then, in the alternative, P&R is liable to RWI for actual damages for the premature termination of the License Agreement.

97.     RWI has been damaged by P&R's breach of its obligation to operate a Ramada guest lodging facility for the remaining term of the License Agreement.

### COUNT ELEVEN – BREACH OF CONTRACT –
### POST-TERMINATION OBLIGATIONS TO DE-IDENTIFY

98.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 97 of this Verified Complaint.

99.     Pursuant to section 13 of the License Agreement, P&R was obligated to cease all use of the Ramada Marks upon termination of the License Agreement, fully de-identify the Facility from its former appearance as a Ramada guest lodging facility, and perform additional post-termination obligations as set forth in section 13 of the License Agreement.

100.    Despite its obligation to do so, P&R has failed to comply with its obligations under section 13 of the License Agreement.

101.    P&R's failure to comply with the requirements of section 13 of the License Agreement constitutes a breach of the License Agreement and has damaged RWI.

18

## COUNT TWELVE – BREACH OF GUARANTY

102.   RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 101 of this Verified Complaint.

103.   Pursuant to the terms of the Guaranty, Patel and Rishi agreed, among other things, that upon a default under the License Agreement, each immediately would make each payment and perform each obligation required of P&R under the License Agreement.

104.   Despite their obligation to do so, Patel and Rishi have failed to make any payments or perform, or cause P&R to perform, each obligation required under the License Agreement, including, among other things, the removal of the Ramada Marks from the Facility and payment of Liquidated Damages in the amount of $60,000.00.

105.   Pursuant to the Guaranty, Patel and Rishi therefore each is liable to RWI for P&R's Liquidated Damages in the amount of $60,000.00, or actual damages in an amount to be determined at trial; for damages attributable to the period during which Defendants have misused the Ramada Marks; and for all other damages attributable to P&R's failure to comply with the terms of the License Agreement.

106.   RWI has been damaged by the breach of the Guaranty by Patel and Rishi.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the unlawful acts of Defendants set forth in each of the counts above, plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc., prays for the entry of judgment against Defendants, jointly and severally:

(a)   Preliminarily and permanently restraining and enjoining Defendants, their affiliates, subsidiaries, officers, agents, servants, employees, representatives, members, independent contractors and attorneys, and all those who act in concert or participation with any of them, from representing their Facility as having any affiliation with RWI or from marketing,

19

promoting or selling guest lodging services and other related services through and with the Ramada Marks, or with or through any other marks that are confusingly similar to the Ramada Marks, either at the Facility or elsewhere;

(b)     Ordering that Defendants account to RWI for any and all revenue derived as a result of marketing, promoting or selling guest lodging services at the Facility through and with the Ramada Marks;

(c)     Ordering that Defendants promptly surrender to RWI all items in their possession, custody or control bearing the Ramada Marks, including, but not limited to, all stationery, letterhead, forms, manuals, printed matter, films, books, cassettes, videotapes, licensed software, advertising interior signage and exterior signage;

(d)     Ordering that Defendants file an affidavit with this Court affirming that they have complied with this requirement to surrender any and all items containing the Ramada Marks within thirty (30) days following the entry of the above order;

(e)     Granting an award of damages in favor of RWI and against Defendants, jointly and severally, for:

(i)     All liquidated damages or actual damages caused by Defendants' premature termination of the License Agreement that are due and owing under the License Agreement, together with interest, attorneys' fees and costs of suit; and

(ii)    Damages caused by Defendants' unauthorized use of the Ramada Marks following the termination of the License Agreement, in an amount to be determined at trial; and

20

    (f)    Granting such other compensatory damages, treble damages, attorneys'

fees, prejudgment interest, cost of suit and such other and further relief as this Court shall deem

just and proper.

                          Respectfully submitted,

                          RAMADA WORLDWIDE INC., formerly
                          known as RAMADA FRANCHISE SYSTEMS,
                          INC.

                          By: _____
                                One of its Attorneys

Dated:  January 20, 2006


John T. Hundley
IL ARDC No. 3123403
THE SHARP LAW FIRM, P.C.
1115 Harrison - Post Office Box 906
Mt. Vernon, IL  62864
United States of America
(618) 242-0246
(618) 242-1170 (facsimile)

21

## **VERIFICATION**

Kathy Cox, of full age, being duly sworn according to law, upon his oath, deposes and says:

1.     I am Senior Director of Franchise Administration for Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI"), have personal knowledge of the following facts and am duly authorized so to represent, and am prepared to testify competently to them if called as a witness.

2.     I have read the foregoing Complaint and all the allegations contained therein. Except as to allegations made upon information and belief, which allegations I believe to be true, all the allegations in the Complaint are true based on my personal knowledge, the records of RWI or information available through employees of RWI.

_____

Kathy Cox

Sworn and subscribed to before me
this \_\_\_\_ day of January, 2006

_____

NOTARY PUBLIC

LINDSAY A MULLER
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES

22